Oman v. Racette Oman may it please the court. Good morning, your honors. I'm Jeffrey Pesallo, appearing for the petitioner Edward Bowman. I was the move-in for the additional certificate of appealability, the immunized statements claim referenced in point two of our brief, so I'd like to start my discussion with that point. The court's order which granted the additional certificate of appealability dated September 16, 2015, directed the parties to brief two issues. One, whether the ruling constituted an adequate state ground sufficiently to bar appellate review, and if not, whether appellant's rights were constitutionally violated. It's my position that the claim is not subject to a procedural bar. During the course of the trial, several times trial counsel sufficiently objected to the introduction of the proffer statements and sought as a remedy a reading of what I've referred to as the fourth part of the testimony. On the basis that the proffer agreement had not been violated? Well, he did, in one of his objections, did reference the proffer agreement being violated. He did state that admission of these immunized statements was improper. Can you say that because I didn't see where he ever argued that the police officer should not be allowed to testify. I thought he was arguing only that if the police officer testified, the first trial explanation for the lie should be admitted as well. Did I miss something? Well, he didn't say it exactly in those words. Well, that's the contemporaneous objection issue. So where did he ever argue that there was a violation, that if the police officer testified, that would be a violation of the agreement? He did not make that specific objection. So without that, how do you argue that the state, you know, was engaged in an unreasonable or impermissible application of its contemporaneous objection rule? Because he did, during the course of the trial, following the testimony, did bring up the fact that there was what he referred to as a queen for a day agreement. He did argue that it was improper. He stated that when Stewart was being offered to show that he had lied, when Mr. Bowman later testified under oath about a queen for a day agreement, which he's supposed to have been immune, I believe, Judge, that it is improper. It's 42 of my brief of the record. It is Appendix 614 through 616. And then he... So he did testify in the first trial, right? Petitioner. Petitioner did testify and took the stand. So do you have any argument that cross-examining him at that trial with the proffer agreement and what he said at the proffer was wrong? No. That was clearly proper. Because that's what the proffer agreement says. If you take the stand and you say something that's contradicted by your proffer agreement and your statement at the proffer, we can cross-examine you about that. That's in the proffer agreement, right? Yes. I don't even think it makes reference to him saying anything contradiction. If a defendant takes the stand, whatever he said during the proffer is fair game during cross-examination. So the question I have is, I know that he didn't testify in the third trial, but does that agreement then reach forever or just for the first trial? Well, if he does not testify at the third trial, the plain language of the agreement, I believe, is what controls. What's the language of the agreement? We can use it in one trial, but then later, if you don't testify in a subsequent trial, it's back to where we were at the beginning of this. That you can't, we can't cross-examine you with your proffer. Correct. Does it say that? Well, the plain language of the agreement only provides two, it provides an absolute bar to use in the one upon cross-examination should the defendant testify. And that's the language in the agreement or on rebuttal. And neither of those occurred. You see my point though, I mean, it's not really clear that if you take the stand in the first trial and then you can legitimately be cross-examined by your proffer at that trial, do they go back to where it was for the third trial as if he had never testified? That's my question. Is there any law on that? It's a unique circumstance, and I'm not aware of any direct law on that. But I would view it as whenever there is a retrial, it's in essence a do-over. All the evidence... The fact that he did testify at the first trial, and now those statements are available to be used, right? The statements... His testimony at the first trial... It's under oath, and they are admissible in the subsequent proceedings. But what I, what my objection to is the testimony of Detective Stewart, who came in and said he lied during the proffer agreement and for the purpose of contradicting the trial, the portions of the trial testimony which they put in. Well, we could be into discussions about whether that was proper impeachment of admissible testimony, but when you get up on redirect, I don't want to put you to the task now. I have read all of pages 614 and 616, and it's not apparent to me how they support your argument that the use of immunized testimony challenge was preserved. Indeed, the section starts with counsel saying, at this time, I would renew my application to have the portion of the and it ends with saying, for this record to be complete, it wants that evidence in. So you'll, on rebuttal, show me where in these pages there is a statement that could be construed as a preservation of the challenge to anything, any use of the immunized testimony. Let's let you finish your argument, though, because you have a different argument, too, and we want to hear you on that about the fact that there was error in the completeness of this, that there was completeness error. Okay, well, that would then, turning to the rule of completeness claim, I contend that the exclusion of the fourth part testimony is an error of constitutional magnitude. It's a two-part test. The first part is there has to be an error under state law. Here, exclusion of a portion of a statement which is favorable to one side is a violation of New York state rule of completeness. I want to hear you on that, but let me ask you, I thought the chamber's error could be even if there was a correct application of state law. Did I misunderstand your argument? Well, I believe that that's the second argument that I would make. All right, but let me let you go back to the first one. On completeness, I had understood New York's completeness rule to pertain to statements made in a single statement, that is, to the same people on the same occasion. Here, what I thought you were trying to do was to take a statement on one occasion, namely a first trial, and then explain it by, I'm sorry, a statement at the proffer session, and explain it with what he said at the first trial. So it's statements on two different occasions, and I didn't see where New York's completeness rule applied to that. Well, I view it as a completeness of the statement. What I view as the statement is the trial testimony. That's not what the government offered. I mean, they may have been careful about this. They didn't put in his statement at trial about where he was and all of that. So the statement you're trying to explain is the statement that the detective testified about? Yes. The explanation came more than a year later. The purpose of putting it in, the fourth part testimony, is to explain the detective's testimony. However, it is a part of the statement made during his testimony at the first trial. They didn't offer that part of his trial testimony. Well, they offered his second part testimony. Which had nothing to do with the lie. But it was made during the course of the same statement. I view the trial testimony as one statement for completeness purposes. Even though it covered two different topics, one dealt with what he was doing that day, and the other one dealt with the explanation about why he lied at the proffer, it's still a part of one statement. And then I'll address now the Chamber's argument. I would agree with Magistrate Netburn's analysis that this is a Chamber's violation. Chambers generally stands for the principle that a defendant has a right to present a defense. And this Court in Justice and Rosario have indicated that under certain circumstances, secondary evidence such as hearsay or prior testimony is admissible. In fact, Chambers even involved hearsay testimony. It's my contention that this is within the scope of Chambers and that the District Court's view of Chambers is too narrow and that the proper view of Chambers is the one Justice Netburn put in the report. But why? Chambers itself at the end says that we're not establishing any new rule and we are saying that state laws about evidence generally can be followed. It's just so bad here that due process was violated. You had witnesses who would have testified that this other person, I think his name was McDonald, told them he murdered the police officer. Three different witnesses. So it seems like a very egregious situation in Chambers. How broadly are we to apply that to this kind of a case where it's just an explanation for why he lied earlier? Where do you draw the line, I guess, is the question we're all struggling with. I acknowledge it is a struggle as to where to draw the lines. Chambers is perhaps an easy case because it was an egregious circumstance. In this particular case, it's perhaps not as egregious as Chambers, but it was certainly a compelling piece of evidence. Chambers turned very much on the indicia of reliability of the other statements and I'm not sure how we have anything comparable here. Tell me what it is that shows that the statement you wanted to offer was reliable. I mean, it was made under oath, I understand that, but other than that, it has no corroboration. It's in his self-interest. It doesn't seem to me to come close to the reliability that was the linchpin for the trial. It was subject to cross-examination. The prosecution felt it was reliable enough during the second trial to... It's not the part it didn't offer. I mean, you know, they could decide, and their whole point was he's a liar, he's told different versions. I didn't understand them to be offering it for their truth, to argue that he was telling the truth. He was minimizing. Regarding its reliability, the only... Here, though, it was not against penal interest, and that was a strong factor in Chambers. In terms of viewing its reliability, the only response that I can make to that is that he was subject to cross-examination. We're not on direct appeal. We are on whether the state court clearly misapplied controlling federal precedents, and I'm not sure how we could say that it's clearly applied, given the differences. By the way, there's no procedural challenge there, but I gather this whole point was raised by your client pro se. Is that right? Are you referring to the immunized statements claim? No. What I'm curious is, did anybody raise Chambers in the state court? No. How is any of this preserved for federal review? How is a Chambers error preserved for federal review? It was... The Chambers was not specifically involved. However, the tenor of the discussion was a Chambers rationale in that it dealt with the right to present a defense and the compromising of the right to present a defense. Well, in any event, the government did not argue procedural default, so we don't have to pursue it. Anything else? Nothing further. I'll rest on my papers. Thank you. Good morning, Your Honors. Allison Gill for the Attorney General's Office. On this habeas appeal, the state court's evidentiary rulings did not deprive Petitioner of a fundamentally fair trial. First, the state court's ruling precluding the admission of the portion of his prior testimony in which the petitioner offered an explanation for why he lied during the proffer session did not violate New York's rule of completeness. The explanation for why he lied at the proffer session was entirely separate from his testimony that he was there that night and he was driving a cab. He was only a cab driver. These involve two totally separate topics, and they did not supplement each other or complement each other. But Mr. Patel says what you did here was cherry pick how much of the first trial you were going to put in. I mean, if you had not, if you had just put in his testimony at the first trial, in which he said, here's my current account, I did lie in a proffer session, and here's why, would you dispute that they would have been allowed, that they would have been entitled to have the whole thing put in? Yes, that could have come in had the prosecution chosen. Instead, you decided not to have his acknowledgement of the lie. You chose to have the agent tell about when he told the lie. And Mr. Patel suggests that that can't be done where his trial testimony gave the whole narrative, including the explanation. But these involve two different issues. One is, what were you doing on the night of the crime, and then why six weeks later did you lie to the police? It's not the same issue. It's a totally separate issue. But there are decisions in New York that say the trial court should have admitted this. People v. Walker, the rule of completeness is violated where the excluded testimony is explanatory of the admitted portion of the statement. It seems like New York law may have been violated here by not letting him explain why he made those statements about not being there. But no, it's not. You're talking about two different statements, which is, I was driving that night, and then let me tell you why six weeks later I told the police I wasn't driving that night. What we don't have from all those other cases where statements are made, just as Judge Droney quoted, is whether the explanation is indeed part of the same statement. But you didn't explain that in your papers, indeed. I'm not sure you explained it to the district court, that New York insisted on it being all part of the same statement, both temporally and to who—it had to be to the same people and at the same time. Yes, it does. It has to be all— But did you make that point to the district court? I think we certainly—we argued that these were two different statements that concerned two different topics. We made that argument— Two different topics, not that the problem was two different times. Two different topics won't do it for you in New York if they were made at the same time and they relate to one another. I believe we argued that it occurred—statements were occurred at different times. I believe we made that argument either in our objections to the district court judge or in our original papers. You did put in the disputed testimony in the second trial, correct? We put—in the second trial, the disputed testimony came in. And then in the third trial, you dropped it. We dropped it, and the testimony about the prophecy came in through the detective rather than through the petitioner himself. And what but sort of the tenor in which the detective presented what happened at the proffer statement. The defendant had—when he testified at the first trial— I'm not suggesting it is wrong, but the strategic decision at the third trial did result in his not being able to provide the explanation of his lies at the proffer session. Well, he could have testified and provided the court that said—there's no Supreme Court case that says you can't force the defendant in that position to either, you know, waive his right and present his defense. He made the argument essentially that he was a cab driver. He put on evidence that he was driving a cab. But the fact that he—the reason he lied at the proffer session, even if you believe it, was not significant to the case. It didn't exonerate him. It didn't mitigate his guilt. It was just simply, let me explain to you why I lied. Is this a harmless error argument? It's a harmless—lack of prejudice, harmless error, you know, either way. It's a close case, though, right? It's not a close case. The evidence— In this trial, three trials. Three trials, but that doesn't mean that the evidence wasn't strong. I mean, there was—the accomplice testified. His testimony— Why do you—what do you attribute the fact that he had to try it three times? I mean, to say the evidence was strong, I mean, we're not doing sufficiency review here. No, but you— We're trying to decide if he was denied a fair trial when, once he testified, hung jury. Twice you put it in, hung jury. Now we've got this third time, and, you know, you're trying to suggest to us that these changes in strategy were of no importance. Well, it's not—first of all, those were not the only differences. At the second trial, his girlfriend testified, or his wife testified, but still the—and provided, you know, supportive testimony, explaining he's a cab driver and, you know, this is his livelihood. Is it correct that the count was 11 to 1? You know, it's not clear what it was. You know, a jury speaks only through their verdict. When they don't reach a verdict, you can't look into it and say, why didn't they reach a verdict? And here, the jury reached the verdict. They found him guilty. He put on a defense, the same defense that he put on in the first two trials, which is that he was just a cab driver. He had nothing to do with the crime. It wasn't a very believable defense in light of the evidence against him, which included the accomplice, the corroborating evidence. And his testimony itself was not very believable. Let me ask you this. You put in the one statement from the first trial about him acknowledging that he was there, he drove everyone. On what theory do you think you were allowed to put in any part of his proffer statement? At the third trial? The language of the debriefing agreement provides that he presents evidence during the course of the prosecution that it can be used to either cross-examine him or rebut that evidence. The first trial is the same prosecution— I'm trying to figure out what it cross-examined or rebutted. It undermined his defense that he was only a cab driver. Cross-examine or rebut? He put on evidence in the third trial that he was driving a cab that night. Right. And this is evidence that would rebut that because he had previously said, I wasn't there that night. I didn't drive with a suspended license. But you put in that he admitted at the second trial that he did. So what was the point? It didn't rebut that. What rebutted that he was the cab driver was he acknowledged that he was that and that he was driving. Indeed, your theory was that he was driving. He drove to the robbery. Yes. So what was the relevance of this and how was it admissible? The statement— The agreement statement, the proffer statement. It undermined his defense that he was only a cab—that he was a cab driver because the proffer statement— Acknowledging that he was a cab driver, you weren't trying to undermine that. That he was only a cab driver and he didn't know anything about the robbery. And what did he say in the statement that undermined that? I wasn't there that night. I was— How did that undermine that he was a cab driver? It undermined his defense that he was—it showed a prior inconsistent statement. He had a series— You were doing it to show that he was lying. Yes. It was a series of different statements. He lied to the police two weeks after the crime. You were limited in how you could do that to show he was lying because you, in fact, put on a statement that you thought was true but minimizing his role. And his prior statement didn't expand the role. It was just a different lie. Right. It showed how during the course of the—all of his meetings, he lied. You may be lucky that you have a procedural default on this one. And I would just like to point out, this was actually duplicative of a statement that he had made to the police two weeks after the crime. And that was— Put it on that way, then, perhaps. But that's not to say you could put it on when you had an agreement. Okay. And I just want to highlight the fact that it was defense counsel who elicited that evidence that he had told the police that he wasn't there that night.  Thank you. Thank you, Your Honor. Your Honor, I just want to address the point counsel made about how the defendant could have testified. That starts going on what I consider to be dangerous grounds in terms of a person's absolute Fifth Amendment right to not incriminate themselves. Under this, what it almost seems counsel is arguing is that if a defendant is arrested, and is interrogated by the police, and gives an exculpatory statement, denies commission of the crime, and then later appears for a proffer and decides to come clean, tells the truth during the proffer, but then things don't work out and there's a trial. Now, what counsel is—what at the trial, they could put in the statement made to the police and then put in the statement from the proffer to rebut that. And the response is, well, the defendant could waive his Fifth Amendment right and testify in response to that. It almost makes the right meaningless because then it puts the defendant in a very difficult position and it actually has a chilling effect on proffers. I want to be sure I understand. The proffer agreement is bound by its terms, so they either could put it on or couldn't put it on. And I understand that point is disputed between the two of you, but I'm not sure how that has any role to play in the Fifth Amendment point. I thought the relevancy of that was that in doing chambers analysis, the availability of the evidence in an alternative form is something that weighs in the balance. In chambers, it was not available in any other form. And here, Judge Swain thought, well, it is available. He's got a Fifth Amendment right to refuse to testify, but it's available. It's not that he has no ability to produce this evidence at all. He has to make a choice. I'm not sure how that raises a Fifth Amendment concern. Nobody can force him to make the choice to waive his Fifth Amendment right, but it's a factor to consider that this availability is different from the circumstance presented in chambers. It is factually different. However, if you view the Fifth Amendment right as an unavailable right, then they become available. It would be a similar circumstance if I subpoenaed a witness to testify and the witness was physically present, but the witness refused to testify on Fifth Amendment grounds. The witness is available. A defendant who should be entitled to the same treatment, that if the defendant invokes his Fifth Amendment right, that he becomes unavailable. My concern with that is taken to its extreme. A defendant in the two weeks before trial should go around making exculpatory statements to anybody who will listen to him on the theory that then he'll argue, well, I have a Fifth Amendment right not to testify, but I have all these witnesses who can testify that I gave them my explanation for why I'm innocent, and I don't think chambers would contemplate going that far. Well, in those circumstances... The hearsay rule would be applied. It wouldn't reclude him from doing it, and the argument that, you know, well, chambers says you can't deny a person a fair trial wouldn't be a concern, I don't think. Well, I would agree with what you said, that in that circumstance, someone running around giving exculpatory statements right before trial to sort of manufacture a record is unreliable hearsay, but here the defendant's statements were cross-examined, the ones that he's trying to put in. It doesn't necessarily make them reliable. It means it's a factor to consider in doing reliability analysis, but they're not statements against penal interest, which was the big factor in chambers. I would agree there is a difference between the two. Okay. All right. We'll take the matter under advisement. Thank you both. Thank you. You took this assignment on from the court, right? Yes. Thank you.